UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MARK MARGIN**                                        **CIVIL ACTION**

**VERSUS**                                             **NO. 04-0626**

**JO ANNE B. BARNHART,**                               **SECTION "N" (3)**
**COMMISSIONER OF**
**SOCIAL SECURITY**

### REPORT AND RECOMMENDATION

The plaintiff, Mark Margin ("Margin" or "Plaintiff"), seeks judicial review of an adverse

decision of the defendant, Jo Anne B. Barnhart, Commissioner of Social Security, on grounds

that the decision is not supported by substantial evidence.  The Court has jurisdiction pursuant to

42 U.S.C. § 405(g). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred

this case to the undersigned United States Magistrate Judge for review and submission of a report

and recommendation. Having reviewed the administrative record, pleadings, the parties' cross

motions for summary judgment, and the applicable law,  the undersigned United States

Magistrate Judge finds that substantial evidence in the record supports the decision of the

Commissioner, and thus, recommends that the Defendant's motion be GRANTED and that the

Plaintiff's motion be DENIED for the following reasons.

### I. PROCEEDINGS

On December 3, 2001, Plaintiff filed an application for Supplemental Security Income

("SSI") alleging he was disabled.[1]   Plaintiff stopped working in September of 1989 after "[his]

---

[1]*See* Application for Supplemental Security Income [Adm. Rec. 37-39].

1



knee gave out," and "[he] fell through a shower."[2]  On March 6, 2002, Plaintiff's claim was denied.[3]  Plaintiff appealed, and a hearing was scheduled before an Administrative Law Judge (ALJ).[4]

On May 13, 2003, Plaintiff appeared at the administrative hearing and was represented by counsel.[5]  In addition to Plaintiff, two other parties appeared and testified: Anthony Margin, Sr. (Plaintiff's father) and Vocational Expert (VE) Jean McCaffery.[6]  On August 26, 2003, ALJ Nancy Griswold issued a written decision, finding that Plaintiff was not "disabled" within the meaning of the Social Security Act.[7]  Plaintiff submitted a request for review of the hearing decision by the Appeals Council on October 21, 2003, and was denied on January 30, 2004.[8]

After the Appeals Council denied Plaintiff's request for review, he timely filed the captioned matter seeking review of the Commissioner's determination.[9]  Having exhausted all administrative remedies, this matter is ripe for review.

---

[2]*See* Transcript of the May 13, 2003 Administrative Hearing conducted in New Orleans, Louisiana by ALJ Griswold [Adm. Rec. 249-50].

[3]*See* Notice of Disapproved Claim [Adm. Rec. 22-5].

[4]*See* Notice of Hearing dated April 16, 2003 [Adm. Rec. 28-31].

[5]*See* Transcript of the May 13, 2003 Administrative Hearing conducted in New Orleans, Louisiana by ALJ Griswold [Adm. Rec. 242-87].

[6]*Id.* at 273-86.

[7]*See* Notice of Unfavorable Decision and Decision of ALJ Nancy J. Griswold dated August 26, 2003 [Adm. Rec. 11-9].

[8]See Request for Review of Hearing Decision [Adm. Rec. 10]; Notice of Appeals Council Action dated January 30, 2004 [Adm. Rec. 5-8].

[9]*See* Complaint filed March 5, 2004 [Fed. Rec. Doc. No. 1]; Commissioner's Answer filed May 26, 2004 [Fed. Rec. Doc. No. 3].

## II. JUDICIAL REVIEW

### A. Standard of Review

The function of the court on judicial review of a denial of benefits is to determine whether "substantial evidence" supports the final decision and whether the Commissioner used the proper legal standards to evaluate the evidence.[10]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[11]   "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[12]   A district court may not try the issues *de novo*, re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if the district judge believes that the evidence weighs against the Commissioner's decision.[13] Nevertheless, the Court must carefully scrutinize the entire record to determine whether substantial evidence exists to support the ALJ's findings.[14]   "In short, conflicts in the evidence are for the Commissioner and not for the courts to resolve."[15]

---

[10]42 U.S.C. § 405(g); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).

[11]*Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[12]*Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Newton,* 209 F.3d at 452.

[13]*Masterson,* 309 F.3d at 272; *Newton,* 209 F.3d at 452.

[14]*Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir. 1992).

[15]*Masterson*, 309 F.3d at 272 (citations and internal alterations omitted).

3

If proper principles of law were applied, and if the Commissioner's decision is supported by substantial evidence, the findings are conclusive and must be affirmed.[16]

## B. Eligibility for Disability Benefits

To qualify for Social Security income or disability insurance benefits, the plaintiff must meet the requirements set forth in the Social Security Act.[17]  Specifically, the plaintiff must be under age 65, file an application for benefits and be under a disability as defined by the Act.[18] Those claiming disability insurance benefits under the Act have the burden of showing the existence of disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."[19] Establishment of "disability" is a dual process.  First, the claimant must prove that she suffers from a medically determinable impairment.[20]  Second, the claimant must prove that her impairment or combination of impairments render her unable to engage either in the work she previously performed or other substantial gainful employment that exists in the national economy.[21]

---

[16]*See id. (citing Richardson,* 402 U.S. at 401)

[17]*See* 42 U.S.C. § 423(a) (2001).

[18]*See* 42 U.S.C. §§ 416(I), 423(a) (2001).

[19]42 U.S.C. § 423(d)(1)(A) (2001).

[20]42 U.S.C. §§ 416(I)(1), 423(d)(1)(A) (2001).

[21]42 U.S.C. §§ 416(I)(1), 423(d)(2) (2001).

4

The Commissioner utilizes a five-step sequential evaluation to aid in the determination of whether a claimant is disabled.[22]  A finding that the claimant is not disabled at any step is conclusive and ends the inquiry.[23]  The five-step analysis was cogently restated in *Shave v. Apfel*:

> First, the claimant must not be presently working at any substantial gainful activity. Second,  the claimant must have an impairment or combination of impairments that are severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments.  If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.[24]

In conjunction with steps four and five, the Commissioner utilizes a "residual functional capacity (RFC) assessment to determine whether the applicant, notwithstanding severe impairment, has the physical and mental ability to perform work-related activities on a regular and continuing basis as generally required by competitive, remunerative work.[25]  Thereafter, the

---

[22]*Newton,* 209 F.3d at 453 (5th Cir. 2000).

[23]*Masterson,* 309 F.3d at 272; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[24]*Shave v. Apfel*, 238 F.3d 592, 593 (5th Cir. 2001).

[25]RFC is defined as "what you can still do despite your limitations" and has three components, to wit: physical abilities, mental abilities, and other abilities affected by impairments.  20 C.F.R. § 404.1545(a) (2002); Soc. Sec. Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).

Commissioner determines if the claimant has the physical and mental ability to perform his past relevant work.[26]  If the claimant's RFC meets or exceeds the requirements of his regular previous employment, the disability claim is denied.[27]  If not, the inquiry proceeds to step 5 where the Commissioner has the burden to show that the claimant can do work as it is generally performed in the national economy.[28]

### III.  ALJ's FINDINGS

Following the five-step sequential evaluation process, the ALJ established that "[c]laimant has an impairment or a combination of impairments considered 'severe' based on the requirements in the Regulations 20 CFR § 416.920(b)."[29]  However, the ALJ found that "these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4."[30]  The ALJ further found Plaintiff's allegations concerning his limitations to be "not totally credible."[31]  The ALJ determined that Plaintiff has the residual functional capacity to perform light exertional work activity but must have the opportunity to change position for a few minutes every hour and is unable to perform stooping, crouching, crawling or squatting. Finally, the ALJ found that Plaintiff was not able to perform any of his past relevant work, but is capable of performing work as a cashier,

---

[26]*See Chaparro v. Bowen,* 815 F.2d 1008, 1010 (5th Cir. 1987).

[27]*See* 20 C.F.R. § 404.1561 (2002).

[28]*See* 20 C.F.R. § 404.1566 (2002).

[29]*See* ALJ' Decision, Finding 2 [Adm. Rec. 19].

[30]*Id.* at Finding 3.

[31]*Id.* at Finding 4.

6

interviewer, information clerk, dispatcher, and security guard, all at the sedentary exertional level and that such work exists in significant numbers in the local and/or national economy.[32]

In reaching this conclusion, the ALJ made several findings related to each step in the five-step sequential process. Plaintiff objects to certain findings as not supported by substantial evidence. Plaintiff takes issue with the ALJ's finding at Step 3, the ALJ's credibility assessment and the determination that Plaintiff has the residual functional capacity to perform sedentary work as a cashier, interviewer, information clerk, dispatcher, and security guard.[33]

## IV. CONTENTIONS OF THE PARTIES

Plaintiff argues that the ALJ failed to properly evaluate the report of the examining physician, insofar as it relates to the limitation/function of Plaintiff's left (dominant) wrist. Plaintiff contends that the ALJ's assessment of Plaintiff's residual functional capacity is unsupported by substantial evidence. Additionally, Plaintiff argues that the ALJ's assessment of Plaintiff's credibility is contrary to the entire body of evidence. Finally, Plaintiff contends that new evidence supports Plaintiff's complaints of disabling low back and leg pain.

The Government counters that the ALJ's decision is supported by substantial evidence and must be affirmed. The Government contends that the ALJ properly considered all evidence relative to Plaintiff's left wrist impairment, and properly relied upon Dr. Gaines' report together with other medical evidence of record in assessing plaintiff's functional capacity. The Government urges the Court to find that the ALJ properly evaluated Plaintiff's subjective complaints of pain under the governing standard. Finally, the Government argues that post-

---

[32]*Id.* at Finding 6 & 7.

[33] *See* ALJ's Decision [Adm. Rec. 14-19].

decision/extra-record evidence does not justify a remand.  In this regard, the Government

highlights that the Plaintiff has failed to show the requisite "good cause" for his failure to submit

certain evidence at the administrative level and that, as to the balance of the additional evidence,

plaintiff has failed to demonstrate its "materiality."

## V. ANALYSIS

### Left Wrist Evaluation

Plaintiff contends that the ALJ "failed by omission to find the plaintiff's left, dominant,

wrist impairment to be severe with absolutely no discussion of this impairment."[34]  Essentially,

Plaintiff argues that the ALJ's reliance on Dr. Gaines' medical findings is in error because Dr.

Gaines made findings relating to the *wrong* wrist (i.e., the right, non-dominant, wrist).  Plaintiff

highlights the fact that the range of motion chart attached to Dr. Gaines' report indicates findings

relative to Plaintiff's  right wrist –  the asymptomatic wrist.[35]

This Court is not persuaded by plaintiff's argument that  "[t]here was no indication in

[Dr. Gaines'] report that she was aware that claimant's dominant extremity was the left, not the

right."[36]  A careful review of the record indicates that Plaintiff's assertions are factually

inaccurate.  In her report, Dr. Gaines made several observations indicating her awareness of

Plaintiff's dominant wrist / hand.  In the first sentence of her report, Dr. Gaines described

Plaintiff as "a 39-year-old, **left-handed** male...."[37]  In the second sentence of her report, Dr.

---

[34]*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 15.

[35]*Id.* at p. 10.

[36]*Id.*

[37]*See* Dr. Camalyn Gaines's Report [Adm. Rec. 94] (emphasis added).

Gaines noted "patient's major complaints are right knee, **left wrist**, and low back pain."[38]  Under

the section labeled "HISTORY OF PRESENT ILLNESS," Dr. Gaines noted "patient developed

**left wrist** pain a few years ago...and most recently...was put in a short hand wrist cast...."[39]

Under the "DETAILS OF THE PAIN" section, Dr. Gaines recorded that "[Plaintiff's] pain is

most severe in his **left wrist**...," and "[h]e reports weakness involving his **left hand**...."[40]  Finally,

after evaluating Plaintiff's X-ray examination, Dr. Gaines noted the presence of "degenerative

osteoarthritis involving his **left wrist** but has good hand strength but decreased range of motion

at the wrist joint."[41]

The repeated observations relating to Plaintiff's left wrist indicate that Dr. Gaines was

aware of Plaintiff's dominant upper extremity.  To date, there has been no allegation or

suggestion of impairment to Plaintiff's right wrist.  Viewing the record as a whole, the solo

reference in Dr. Gaines's report to Plaintiff's *right* wrist and the notations on the ROM chart in

the wrong column are clearly typographical/mechanical errors.[42]

Procedural perfection in administrative proceedings is not required and a reviewing court

should not vacate an administrative decision without a showing of prejudice to the claimant's

substantial rights.[43]  Dr. Gaines both began and ended her report with observations of Plaintiff's

---

[38]*Id.*

[39]*Id.*

[40]*Id.* at [Adm. Rec. 94-5].

[41]*Id.* at [Adm. Rec. 96].

[42]*Id.* at [Adm. Rec. 96, 98].

[43]*See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

*left* dominant wrist and Plaintiff has failed to establish prejudice resulting from the ALJ's consideration of and reliance upon Dr. Gaines' report.

### Residual Functional Capacity Assessment

The ALJ found that the Plaintiff retained the residual functional capacity for light exertional work activity, but must have the ability to change position for a few minutes every hour and is unable to perform stooping, crouching, crawling, or squatting. Plaintiff contends the ALJ erred in assessing his residual functional capacity and that, even if the ALJ's findings are credited, there are not a significant number of jobs in the national economy that Plaintiff could perform.

The ALJ's assessment of Plaintiff's residual functional capacity is consistent with Dr. Gaines' functional assessment. In the section marked "CONCLUSION," Dr. Gaines stated,

> [Plaintiff] should avoid activities which require prolonged sitting, standing, or walking unless he is allowed to alternate positions occasionally. He should limit activities which require frequent navigation of stairs, stopping, crouching, crawling, bending, kneeling, or squatting. He should be able to lift up to 35 – 40 pounds without any difficulty, although it would be better if he would just do this at the waist level.[44]

Nothing in Dr. Gaines's findings is inconsistent with ALJ Griswold's residual functional capacity assessment. Thus, substantial evidence exists to support the ALJ's conclusion.[45]

### Work Available in Significant Numbers

Margin contends that the ALJ erred at Step 5 of the sequential evaluation process when he found that there were a significant number of jobs that Plaintiff could perform in the national

---

[44]*See* Dr. Camalyn Gaines's Report [Adm. Rec. 96].

[45]*See* 42 U.S.C. § 405(g); *Newton*, 209 F.3d at 452; *Brown*, 192 F.3d at 496.

10

economy.  The vocational expert testified that the Plaintiff's past relevant work as a deputy

sheriff was light, low semi-skilled work according to the Dictionary of Occupational Titles but,

as plaintiff described his work, it was at the medium exertion level.  The vocational expert was

asked to assume that the existence of a hypothetical person of the claimant's age, education and

work profile with the residual functional capacity for light exertional work activity with

additional limitation, including the ability to change position for a few minutes every hour and

restrictions from stooping, crouching, crawling or squatting.  The VE testified that such a

hypothetical person could not perform the claimant's past relevant work as a deputy sheriff but

could perform the following jobs, to wit: (1)  a cashier at the sedentary level (11,000 such jobs

locally and 600,000 nationally); (2) interviewer at the sedentary level (700 such jobs locally and

147,000 nationally);  (3) information clerk at the sedentary level ( 700 such jobs locally and

55,000 nationally); (4) dispatcher at the sedentary level (600 such jobs locally and 32,000

nationally); and (5) security guard at the sedentary level (1,000 such jobs locally and 100,000

nationally). [46] Upon adding the restrictions of the inability to perform continuous repetitive

motions of the dominant left wrist and hand, the VE testified that such a restriction would

eliminate the cashier and dispatcher jobs, but that the added restriction of overhead reaching with

the non-dominant right upper extremity would yield no change in the positions available

locally/nationally.[47]

   To be considered disabled, a claimant must have a severe impairment that makes him

unable to perform his previous work or any other substantial gainful activity existing in the

---

[46]Transcript of Administrative Hearing [Adm. Rec. 282-283].

[47]*Id.* at 283.

national economy.[48]  Work exists in the national economy when it exists in significant numbers

in the region in which the claimant lives or in several other regions of the country, regardless of

whether such work exists in the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work.[49]

Although there is no magic number determining when the number of jobs available is

"significant," courts reviewing this question have considered a number of flexible factors,

including the level of the claimant's disability; the reliability of the vocational expert's testimony;

the reliability of the claimant's testimony; the distance the claimant is capable of traveling to

engage in the assigned work; the isolated nature of the jobs; and the types and availability of such

work.[50]  Ultimately, the question has been left to the trial judge's common sense in the face of

the statutory language and a particular fact situation.[51]  Other courts, generally eschewing a

bright-line rule, have found a significant number of jobs even when the number of positions

available in the region in which the claimant lives appears statistically small.[52]

---

[48] 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a).

[49] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1566(a).

[50] *Hall v. Chater*, 109 F.3d 1255, 1259 (8 th Cir.1997). *See also Mericle v. Secretary of Health and Human Servs.*, 892 F.Supp. 843, 847 (E.D.Tex.1995)(*citing to Hall v. Bowen*, 837 F.2d 272 (6th Cir.1988)).

[51] *See Mericle*, 892 F.Supp. at 847 (*citing Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988)).

[52] *See, e.g., Lee v. Sullivan,* 988 F.2d 789 (7th Cir.1993)(1,400 jobs); *Trimiar v. Sullivan,* 966 F.2d 1326, 1330-32 (10th Cir.1992)(650-900 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988) (500 jobs); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987) (174 jobs).

12

Insofar as Plaintiff asserts that the vocational expert failed to specify whether the positions were located in the geographical area/region where he lives as opposed to the national economy, the VE's testimony reiterated above belies any such argument. The regulations provide that "[w]ork which exists in the national economy" does not include isolated jobs existing only in very limited numbers in relatively few locations outside of the region where the claimant lives, 20 C.F.R. § 404.1566(b); however, the Commissioner is not required to show that job opportunities exist within a claimant's local area.[53] The regulations implementing the Social Security Act clarify this point, providing that it does not matter whether work exists in the immediate area in which you live.[54]

The ALJ's decision reflects that she weighed plaintiff's testimony, the vocational expert's testimony, and further considered the plaintiff's age, level of disability, education, and past relevant work experience in determining that there was a significant number of jobs in the national economy which Margin could perform. Margin had in fact acquired some skills from past relevant work as a deputy sheriff, which makes him well-qualified for the sedentary job of security guard. Given Plaintiff's particular circumstances, the ALJ's determination that 2,400 jobs in Louisiana and 295,000 jobs nationally[55] constitute "a significant number" is supported by substantial evidence and does not constitute legal error. Moreover, Plaintiff has failed to cite any

---

[53] *Harmon v. Apfel*, 168 F.3d 289, 292 (6 th Cir.1999).

[54] 20 C.F.R. § 404.1566(a)(1).

[55] These statistics contemplate the sedentary jobs solely for the positions of interviewer, information clerk and security guard. *See* Transcript of the May 13, 2003 Administrative Hearing conducted in New Orleans, Louisiana by ALJ Griswold (indicating the availability of the following jobs: Interviewers, 700/140,000 sedentary; Information clerks, 700/55,000 sedentary; and Security/gate guards, 1,000/100,000 sedentary) [Adm. Rec. 283].

authority to support of his argument that 2,400 jobs in the state of Louisiana is statistically "insignificant."

Substantial evidence supports the ALJ's finding at step five of the sequential evaluation process.

### Credibility Assessment

Plaintiff contends that the ALJ failed to adequately explain her rationale for rejecting the plaintiff's complaints of disabling pain and symptomotology.[56] More specifically, Plaintiff argues that the ALJ failed to discuss evidence suggesting that his pain is of a completely disabling genre.[57] Further, Plaintiff argues that the ALJ failed to discuss her rationale for rejecting Plaintiff's testimony regarding his limitations of function.[58]

Whether pain is disabling is an issue for the ALJ, who has the primary responsibility for resolving conflicts in the evidence.[59] It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination in this regard is entitled to considerable deference.[60] Subjective complaints of pain must be corroborated by clinical findings and objective medical evidence.[61] Conflicts in the evidence are for the Commissioner and not the

---

[56]Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 21.

[57]*Id.*

[58]*Id.* at p. 24.

[59]*See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).

[60]*See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991); *James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).

[61]*See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

Court to resolve.[62]

The record reveals that the ALJ devoted a significant portion of her decision to an assessment of Plaintiff's credibility.

> The [ALJ] has considered claimant's allegations as required under SSR 96-7p. She concludes that the objective signs and findings established by medically acceptable diagnostic techniques do not reveal the existence of impairments which would cause severe and disabling restrictions and symptoms as alleged by claimant. In addition to subjective allegations, appropriate consideration must be given relative to the opinions, evaluation and conclusions of the state medical consultants under the provisions of SSR 96-6p. I have considered the opinions and findings of the state agency experts and credit the same with substantial weight because they are consistent with the weight of the probative evidence.[63]

The ALJ specifically referred to medical findings that did not reveal a disabling level of symptomology. Indeed, laboratory studies showed that Plaintiff did not have a significant spinal cord defect or instability in the right knee, right shoulder or left wrist.[64] The ALJ discussed Dr. Gaines' assessment, which revealed that the plaintiff could lift 35-40 pounds and perform other activities not requiring certain postural functions.[65] The ALJ highlighted medical evidence indicating that Plaintiff's impairments were not constant, unremitting, and wholly unresponsive to treatment.[66] The ALJ noted that Plaintiff demonstrated a good response to Lidocaine

---

[62]*See Masterson*, 309 F.3d at 272.

[63]*See* ALJ's Decision [Adm. Rec. 17].

[64]*See* Medical Reports [Adm. Rec. 86, 93, 141, 142, 169, 177].

[65]*See* Dr. Camalyn Gaines's Report [Adm. Rec. 96].

[66]*See Johnson v. Sullivan*, 894 F2d 683 (5th Cir. 1990).

15

(injection for back pain).[67]  The ALJ also observed  notations in the Plaintiff's medical records, which indicate that his condition is responsive to medications, including Aleve, Ibuprofen, Celebrex, and Vioxx.[68]   This Court's review of the medical records reveals that the Plaintiff has also been prescribed Motrin or Tylenol on an "as needed" basis for pain.[69]  Nowhere in the record does it indicate that Plaintiff has taken a significant dosage of medication with little or no relief.[70]

The ALJ further observed that Plaintiff has not always complied with prescribed treatment.[71]  For instance, physical therapy was ordered in 2002; nevertheless, the record indicates that Plaintiff did not appear for his appointment and did not call to reschedule.[72] Moreover, medical records reflect that Plaintiff was discharged for noncompliance.   This Court's review of the entire record indicates that substantial evidence supports the ALJ's determinations as to Plaintiff's credibility and the fact that his pain was neither disabling, nor wholly unresponsive to pain medication and physical therapy.

---

[67]*See* Records of Louisiana State University Health Sciences Center, Medical Center of Louisiana at New Orleans [Adm. Rec. 113, 133].

[68]*See* ALJ's Decision [Adm. Rec. 17].

[69]*See* Records of Louisiana State University Health Sciences Center, Medical Center of Louisiana at New Orleans [Adm. Rec. 137].

[70]*See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983) (it is significant that the claimant does not take an inordinate amount of medication).

[71]*See* ALJ's Decision [Adm. Rec. 17].

[72]*See* Records of Louisiana State University Health Sciences Center, Medical Center of Louisiana at New Orleans [Adm. Rec. 127].

16

**Post-Decision Evidence**

Plaintiff contends that "new and material evidence supports plaintiff's complaints of low back and lower extremity pain" and therefore, the decision of the Commissioner should be reversed and the case remanded for further consideration in light of the additional medical evidence.[73]   The additional evidence highlighted by Plaintiff consists of the following, to wit: (1) Deposition Testimony of Dr. Scott Kutz dated December 8, 2003;  (2)  Conexus / Wal-Mart Pharmacy Medical Expenses Report dated August 31, 2004;  (3) Home Delivery Pharmacy Statement dated July 27, 2004; (4)  Discogram Report from LSU Health Sciences Center dated January 31, 2002;  (5)  Medical Assessment of Ability to Do Work-Related Activities (Physical) dated October 26, 2004; (6) Family Support Order Recommendation dated December 7, 2004; and (7)  Medical Center of Louisiana at New Orleans Physical Medicine & Rehabilitation Report dated September 30, 2004.[74]

An understanding of the chronology of events in this case is essential in ruling on this issue.  On May 15, 2003, ALJ Griswold conducted a hearing on Plaintiff's claim.[75]  At the conclusion of that hearing, ALJ Griswold left the record open for 30 days, giving the Plaintiff an opportunity to submit recent medical / physical therapy records for consideration.[76]  On August

---

[73]*See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 26.

[74]*See* Plaintiff's Motion for Leave to Attach Exhibits A – C.

[75]*See* Transcript [Adm. Rec. 242-87].

[76]*Id.* at [Adm. Rec. 286].

26, 2003 (more than three months post-hearing),  ALJ Griswold issued an unfavorable decision finding the Plaintiff ineligible for benefits based upon his December 3, 2001 application.[77]

The ALJ's  decision was affirmed by the Appeals Council on January 30, 2004.[78]  In denying Plaintiff's Request for Review, the Appeals Council considered some additional evidence (a note from Dr. Kutz dated October 14, 2003).[79]

Judicial review of administrative decisions denying Social Security Benefits is confined to the pleadings and the transcript of record.[80]  A court may order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.[81]

The Discogram Report from LSU Health Sciences Center ("discogram report"), the Connexus / Wal-Mart Pharmacy Medical Expenses Report ("medical expense report"), and the deposition of Dr. Kutz ("deposition") were either completed or could have been obtained prior to the Appeals Council's denial of Plaintiff's Request for Review.[82]  Plaintiff contends that "good cause" exists to admit this evidence due to a letter he received by the Appeals Council allowing

---

[77]See Decision of ALJ [Adm. Rec. 19].

[78]See Notice of Appeals Council Action [Adm. Rec. 5-9].

[79]Id. at [Adm. Rec. 9].

[80]See 42 U.S.C. § 405 (g); Lovett v. Schweiker, 667 F.2d 1, 2 (5th Cir. 1981).

[81]See 42 U.S.C. § 405 (g).

[82]Although the medical expense report is dated August 31, 2004, it contains records of filled prescriptions from March 18, 2002 to July 21, 2004.  Plaintiff has failed to explain why the then existing records could not have been obtained prior to January 1, 2004.

him 30 days to submit additional information.[83]  The letter received by Plaintiff was dated

December 2, 2003; thus additional evidence should have been provided to the Appeals Council

by January 1, 2004.[84]  Plaintiff has failed to show why the discogram report, the medical expense

report, and Dr. Kutz's deposition transcript were not submitted to Appeals Council in a timely

fashion.   Plaintiff's argument regarding the absence of prejudice to the defendant is without

merit.

　　　　Plaintiff clearly fails to meet the governing "good cause" standard with respect to

consideration of additional evidence.  Courts should only consider additional evidence if "good

cause" is shown for failure to present the additional evidence at the administrative level.  Plaintiff

has failed to meet this standard  with respect to the discogram, medical expense report and the

deposition transcript of Dr. Kutz and thus Plaintiff's Motion to Attach should be denied on

account of the plaintiff's failure to show the requisite "good cause."

　　　　The balance of the "additional evidence" which plaintiff seeks to incorporate into the

administrative record fails to meet § 405g's  "materiality" requirement.  To be material, extra-

record evidence must relate to the time period for which benefits were denied.[85]  In this case,

Plaintiff applied for Supplemental Security Income benefits on December 3, 2001 and his

application was denied on August 26, 2003.  Therefore, any extra-record evidence that this court

---

[83]*See* Plaintiff's Exhibit B at p. 1.

[84]The record indicates that the Appeals Council in fact reviewed additional evidence
submitted by Plaintiff, but that consisted only of a note from Dr. Kutz dated October 14, 2003.
*See* Order of Appeals Council [Adm. Rec. 9].

[85]*See Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003); *Johnson v.Heckler*, 767
F.2d 180, 183 (5th Cir. 1985).

would consider must relate to that time period.  Additional evidence, consisting of Home

Delivery Pharmacy Statement, the Assessment of Ability to do Work Related Activities, the

Report of the Medical Center of Louisiana at New Orleans Physical Medicine & Rehabilitation,

and the Family Support Order Recommendation, pertain to the period of time from July of 2004

to December of 2004.

The aforesaid evidence does not relate to the alleged period of disability at issue

(December 3, 2001 to August 26, 2003) and cannot be considered "material" extra-record

evidence for the purposes of 42 U.S.C. § 405 (g).  Evidence is material if has probative value and

is relevant.[86]  To be relevant, the new evidence must relate to the time period for which benefits

were denied and cannot concern evidence of later acquired disability or subsequent deterioration

of a previously non-disabling condition.[87]  Plaintiff is free to submit this evidence to the Social

Security Administration in connection with a new application for benefits, but it is clearly not

properly considered  impeachment *vis a vis* the ALJ's August 26, 2003 decision under review.[88]

## VI. CONCLUSION

Substantial evidence supports the ALJ's decision that Plaintiff is not disabled and that

there are a significant number of jobs that the claimant can perform consistent with his current

residual functional capacity, restrictions and limitations.[89]  Therefore,

---

[86]*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981).

[87]*Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir.1987); *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir.1985).

[88]*See Johnson*, 767 F.2d at 183.

[89]*See Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000)("A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the

**IT IS RECOMMENDED** that the Commissioner's decision be AFFIRMED and that the plaintiff's complaint be DISMISSED WITH PREJUDICE.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 27 day of May, 2005.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

decision" and, in applying the this standard, the court "may not reweigh the evidence or substitute [its] judgment for that of the Commissioner.")

21