UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK MARGIN | CIVIL ACTION |
| VERSUS | NO. 04-0626 |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF<br>SOCIAL SECURITY | SECTION "N" (3) |

### SUPPLEMENTAL REPORT ON REMAND
### AND RECOMMENDATION

The plaintiff, Mark Margin ("Margin" or "Plaintiff"), seeks judicial review of an adverse decision of the defendant, Jo Anne B. Barnhart, Commissioner of Social Security, on grounds that the decision is not supported by substantial evidence. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the undersigned United States Magistrate Judge for review and submission of a report and recommendation. The Court previously issued a report and recommendation [Rec. Doc. No. 14], but the matter was remanded to the undersigned Magistrate Judge to consider the January 31, 2002 Discogram Report [Adm. Rec. 165-167] and the deposition of Dr. Mark Scott Kutz dated December 8, 2003 [Rec. Doc. No. 9/Exhibit "A"].[1] Having again reviewed the administrative record, pleadings, the parties' submissions, and the applicable law, the undersigned United States Magistrate Judge RECOMMENDS that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be REVERSED and that this case be REMANDED for further proceedings consistent with this report.

---

[1]Plaintiff filed a Motion for New Trial [Rec. Doc. No. 22], which was reset for hearing before the district judge on December 8, 2005, and was unopposed by the Government.

1



As aforestated this matter was remanded for the purpose of considering certain evidence, *i.e.*, the transcript of the Deposition of Dr. Scott Kutz which may have been received by the Appeals Council prior to its determination.[2] Plaintiff contends that this "new and material evidence supports plaintiff's complaints of low back and lower extremity pain" and therefore, the decision of the Commissioner should be reversed.[3] The evidence at issue on remand to the undersigned Magistrate Judge are: (1) Deposition Testimony of Dr. Scott Kutz dated December 8, 2003; and (2) Discogram Report from LSU Health Sciences Center dated January 31, 2002.

In this case, Plaintiff applied for Supplemental Security Income benefits on December 3, 2001 and his application was denied on August 26, 2003. The aforesaid evidence relates to that relevant time period. At the outset the Court notes that, in large part, ALJ Griswold's determination of "not disabled" rests upon her credibility determination, *i.e.*, her finding that "the objective signs and findings established by medically acceptable diagnostic techniques do not reveal the existence of impairments which would cause severe and disabling restrictions and symptoms as alleged by claimant."[4] Indeed, when asked to assume that the claimant's allegations of pain and restrictions were credible, Vocational Expert Jean McCaffery testified that there would be no jobs available that the claimant was capable of performing.[5]

---

[2] The district judge concluded that exhibits to plaintiff's motion for new trial suggest that the transcript of the deposition was received by the Appeals Council on December 31, 2003, which was prior to the issuance of the Appeals Councils' Decision dated January 30, 2004 finding no reason to review the ALJ's Decision.

[3] *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at p. 26.

[4] *See* ALJ Griswold's Decision [Adm. Rec. 17].

[5] *See* Transcript of Administrative Hearing [Adm. Rec. 285].

In his deposition dated December 8, 2003, Dr. Scott Kutz, Chief Resident of Neurosurgery at Louisiana State University Medical Center, testified that Margin's MRI indicated multiple levels of degeneration within the lumbar spine.[6] He further noted enhancements in the region of the left S1 nerve root which he believed were related to an underlying inflammatory process.[7] Comparing the August, 2001 to the August, 2003 MRI report, Dr. Kutz testified that these suggest that Margin's degeneration of the lower spine is worsening and extending to other levels. When evaluated on October 14, 2003, weakness was found in both lower extremities in the iliopsoas muscles, the hamstring muscles and the quadriceps. The last MRI report documented diffused mild weakness in both lower extremities. Also noted were an absence of reflexes in the lower extremities of both knees and ankles in both legs, which is an indication of nerve root compression.[8]

When asked what restrictions would have been placed on Margin considering his lower back condition, Dr. Kutz testified that the claimant should be restricted from lifting over 15 pounds *with any frequency* and that he would have difficulty either having to stand or walk for a length of time greater than one hour. As to bending and stooping, Dr. Kutz indicated that Margin could bend or stoop, but he could only do so two to three times within an hour. He further indicated that the claimant could not climb *at all* and that, only *if sufficiently medicated*, would Margin be capable of alternating between sitting and standing. Most notably, Dr. Kutz's assessment of Margin's limitations was made based entirely upon the finding restricted to his

---

[6] *See* Deposition of Dr. Scott Kutz at p. 14.

[7] *Id.* at pp. 17-18.

[8] *Id.* at pp. 22-23.

lower back. Dr. Kutz testified that Margin's physical activities could be further restricted based on other medical conditions such as fractures to his wrists and status post-surgery knees, neither of which were considered in making his assessment of the plaintiff's limitations of work-related functions.[9]

Dr. Kutz identified a form he filled out dated October 14, 2003, wherein he diagnosed Margin's back condition as lumbar spondylosis and indicated no chance of improvement (*i.e.*, permanent disability). Dr. Kutz testified that he had not seen anything in Margin's record or otherwise that would give him any reason to believe that the patient was a malingerer.[10]

The aforesaid evidence is material to the time period in question and critical to any determination of the plaintiff's residual functional capacity. The ALJ is required to consider any medical opinions (statements from acceptable sources), which reflect judgments about the nature and severity of the impairments and resulting limitations.[11] Dr. Kutz's testimony regarding the plaintiff's lumbar condition and concomitant pain and physical limitations should be considered in the first instance by the ALJ in determining the Margin's residual functional capacity (RFC).

> When new evidence becomes available ... and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings. We review new evidence only to determine if a remand is appropriate (internal citations omitted).[12]

---

[9] *Id.* at pp.25-27.

[10] *Id.* at 30, 32.

[11] *See* 20 C.F.R. § 416.927; Social Security Rulings 96-2p and 96-6p.

[12] *See Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995).

The ALJ must be given the opportunity to specifically consider the comprehensive record, including the opinion of Dr. Kutz, *inter alia*, in the first instance. The Court believes that the opinions of Dr. Kutz, regarding the etiology, progression and extent of Margins' lumbar condition together with his assessment of the resulting pain and physical limitations, when considered in conjunction with Margins' other physical ailments and limitations, could have a detrimental effect on his RFC, which in turn could potentially affect his disability status determination.

Without having reviewed the opinion of Dr. Kutz, ALJ Griswold concluded that Margin retained the "residual functional capacity for light exertional level work"[13] with the only limitations being that he "must have the ability to change position for a few minutes every hour" and that he is restricted from any "stooping, crouching, crawling or squatting." [Adm. Rec. No. 18, 19]. The ALJ's hypothetical fails to take into account for any restriction from climbing and the proscription of lifting more than fifteen pounds *with any frequency*. As aforestated, light work activity entails the ability to sit, stand and walk for much of the work day, and to lift/carry 10-20 pounds.[14]

---

[13] The physical exertional requirements for light work are as follows: Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

[14] *See* 20 C.F.R. 416.967(b).

SSR 96-8p provides that residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, which means 8 hours a day, for 5 days a week, or an equivalent work schedule. The RFC assessment is a function-by-function assessment based upon *all of the relevant evidence* of an individual's ability to do work-related activities. RFC contemplates both nonexertional and exertional factors, which involve the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling. Moreover, the regulations provide that each function must be considered separately. The ALJ's assessment of RFC must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and include a resolution of any inconsistencies in the evidence.[15] Thus, to determine that an applicant can do a given type of work, the ALJ must find that the applicant can meet the job's exertional and nonexertional requirements on a sustained basis and can maintain regular employment.[16]

Moreover, according to *Scott v. Heckler*, a treating physician's opinion should generally be given "considerable weight," though less weight may be given when there is good cause to the contrary. *Scott*, 770 F.2d 482, 285 (5th Cir.1985). On remand, the ALJ should give the proper consideration to plaintiff's treating physician's medical opinions, together with *all* of the other evidence[17] which relates to plaintiff's multiple impairments, including permanent degenerative lumbar disc disease (multiple levels), bilateral foot pain, degenerative oosteoarthritis/decreased

---

[15] SSR 96-8p.

[16] *See Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir. 2002).

[17] *See Brenem v. Harris*, 621 F.2d 688, 690 n. 1 (5th Cir.1980).

range of motion involving the left wrist with intercarpal narrowing, lateral meniscus disease and quadriceps atrophy involving the right knee, status post multiple surgeries of the right knee and documented antalgic[18] gait pattern. Additionally, the pharmacy records, showing plaintiff regularly filled prescriptions (Celebrex, Univasc, Tramadol, Hydrocodone), do lend credibility to Margin's complaints of debilitating, constant and unremitting pain and therefore should be considered by the ALJ on remand.[19] Additionally, the side effects of these medications, if any, should be considered in determining whether there is any work available that the claimant is capable of performing and whether the plaintiff is capable of performing regular work on a continuing and sustained basis.

The Court remains mindful that the Commissioner has the exclusive prerogative to weigh evidence and resolve conflicts, and further acknowledges that judicial review is both highly deferential to the Commissioner and limited in scope. The Court does not purport to direct a particular ultimate outcome upon remand. Therefore, upon remand, the Commissioner will be free to re-examine all issues in light of the applicable standards discussed hereinabove.

## RECOMMENDATION OF REMAND

Based upon the foregoing discussion of the issues, evidence and the law, the undersigned Magistrate Judge recommends that the Commissioner's Motion for Summary Judgment be DENIED, the Commissioner's decision be REVERSED and the case be REMANDED for further

---

[18]"Antalgic" is defined as both "(1) countering pain and (2) pertaining to a position, attitude or posture in order to avoid pain." Blakiston Gould's Medical Dictionary Fourth Edition at p. 86.

[19]*See Brenem v. Harris*, 621 F.2d at 690 n. 1 (noting that, when remand is ordered, the hearing should cover all pertinent evidence, including evidence that might not otherwise warrant a remand for new evidence).

proceedings consistent with this report.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this  30th  day of January, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**